IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROOSEVELT CLARK,                                        No. 3:19-cv-00851-HZ

               Plaintiff,                          OPINION & ORDER

     v.

SAFEWAY, INC., a Foreign Corporation,

               Defendant.


Beth Ann Creighton
Laura Koistinen
Creighton & Rose, PC
65 SW Yamhill Street, Suite 300
Portland, OR 97204

       Attorneys for Plaintiff

Jonathan Mark Radmacher
McEwen Gisvold LLP
1100 SW Sixth Avenue, Suite 1600
Portland, OR 97204

       Attorney for Defendant

HERNÁNDEZ, District Judge:

Plaintiff brings a claim of racial discrimination under 42 U.S.C. § 1981, state law claims of racial discrimination and racial intimidation, and a state law negligence claim against Defendant arising from an altercation during which Plaintiff was assaulted by a customer while he was shopping in one of Defendant's grocery stores. Defendant moves for summary judgment on each of Plaintiff's claims. The Court grants in part Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff is a Black man who visited a Safeway grocery store located on Division Street in Gresham ("Division Safeway") on the evening of April 27, 2018. Not. Remov. Ex. 2 ("Compl.") ¶¶ 1, 7. Plaintiff first visited the customer service counter and bought cigarettes. Creighton Decl. Ex. 7 ("Pl. Dep.") 35:3–20, ECF 30-7. After buying cigarettes, Plaintiff went to the back of the store, selected two beers, and went to find soda. *Id*. at 35:21–36:2. While he was in the soft drink aisle of the grocery store looking for soda, Plaintiff asked a store employee where he could find refrigerated soda. *Id*. at 36:13–20. As Defendant's employee directed Plaintiff to the refrigerated soda, another customer who was later identified as Jonathan Garner approached Plaintiff. Compl. ¶ 8; Van Zante Decl. Ex 1 at 12–13, ECF 18. At that time, a total of three Safeway employees were standing nearby in the same aisle as Plaintiff and Mr. Garner. *Id*.; Compl. ¶ 7. As Plaintiff began to walk away and passed Mr. Garner, who was walking in the opposite direction, Mr. Garner reached out and shoved Plaintiff, who fell into the shelves and stumbled. *Id*. ¶ 10; Pl. Dep. 38:19–25, 39:2–7; Van Zante Decl. Ex. 1 at 16–19. After shoving him, Mr. Garner yelled at Plaintiff and called him racial slurs. Creighton Decl. Ex. 3 ("Carter Dep.") 47:8–23, ECF 30-3. Plaintiff suffered injuries to his ribs and arm. Compl. ¶ 10. Mr. Garner then left the store. *Id*. ¶

12. Mr. Garner was in the store for a total of just over two minutes from 8:48 p.m. until 8:50 p.m. Van Zante Decl. Ex 1 at 5, 26.

The Safeway employees in the aisle with Plaintiff did not react, intervene, attempt to assist Plaintiff, or complete an incident report. Clark Decl. ¶ 4, ECF 29. After the incident, Plaintiff found the refrigerated soda he was looking for and paid for his items at a cashier station in the front of the store. Pl. Dep. 47:22–48:8; Radmacher Decl. II Ex. 4 at 3, ECF 33. Plaintiff told the cashier what had happened, and the cashier responded that if someone had shoved the cashier into a shelf, the cashier would "go kick his ass." *Id*. at 48:9–16. The cashier then assisted Plaintiff with purchasing his items, and Plaintiff left the store. Radmacher Decl. II Ex. 4 at 3. Plaintiff spent almost twelve minutes in the store from 8:44 p.m. until 8:55 p.m. Van Zante Decl. Ex. 1 at 1, 33.

The next day, Plaintiff reported the assault to the police and returned to Safeway to report the assault. Pl. Dep. 50:9–23. Plaintiff spoke to a Safeway employee named Tim Thompson, who told Plaintiff that he would review the security video and that Plaintiff should call Mr. Thompson the following day. *Id*. at 54:11–21. Plaintiff testified that Mr. Thompson did not want to make a report. *Id*. at 53:19–21. Plaintiff misplaced Mr. Thompson's phone number, so he did not call back the following day. *Id*. at 54:5–8, 54:14–21. Instead, Plaintiff returned to Safeway on Monday, three days following the incident, and dropped off a copy of the police report and a note that Plaintiff had received from his doctor. *Id*. 54:14–25.

In 2019, Mr. Garner was convicted of fourth-degree assault and harassment for his assault of Plaintiff. Creighton Decl. Ex. 16, ECF 30-16; Radmacher Decl. Ex. 4, ECF 19.

Safeway may have experienced problems with Mr. Garner before April 27, 2018. Darius Carter, one of the employees who witnessed Mr. Garner assault Plaintiff, described a situation

where he had kicked a customer out of the Division Safeway store for being loud, yelling, cussing, and using racial slurs. Carter testified that he thought that the person he had kicked out was Mr. Garner, but Mr. Carter could not be certain if it was Mr. Garner and was uncertain of the date when it happened. Carter Dep. 38:18–39:4; 51:19–52:4; 52:16–21.

Morgan Bratcher, another Safeway employee, testified that Mr. Garner had been kicked out of the Division Safeway store on another occasion after she confronted him and told him that he would have to buy soup because he was taking complimentary crackers from the soup station. Creighton Decl. Ex. 12 ("Bratcher Dep.") 15:8–25, ECF 30-12. In response, Mr. Garner got in her face and began yelling and cursing at her. *Id*. She walked away from him, and he left the store. *Id*. Bratcher testified that she believes that incident occurred sometime after April 2018. Radmacher Decl. II Ex. 2 ("Bratcher Dep.") 21:5–10, ECF 33.

Another employee, Nadia Pitsul, also described an incident when she saw Mr. Garner in the floral department talking to himself and yelling. Creighton Decl. Ex. 6 ("N. Pitsul Dep.") 18:21–19:12. The record is unclear about when that incident occurred. Ms. Pitsul wrote a statement in September 2018 in which she said that the incident had occurred a "couple months" earlier. Creighton Decl. Ex. 14, ECF 30-14. James Porter, another Division Safeway employee, described an incident involving Mr. Garner in a statement dated September 26, 2018, in which Mr. Porter had confronted Mr. Garner for theft. Creighton Decl. Ex. 13, ECF 30-13. Mr. Porter said that Mr. Garner gave the item back and then started an "altercation" with Mr. Porter. *Id*. Mr. Porter's statement does not indicate when that incident occurred. *Id*.

Safeway contracted with a third-party security company to provide security guards at several—but not all—of its Portland metro area stores. Creighton Decl. Ex. 1 ("Chapman Dep.") 24:3–9; 31:25–32:19. At some of its stores, Defendant had one or more security guards on duty

during all hours that the store was open and, at other stores, had security guards on duty only for nine-hour shifts during the store's busiest hours. Chapman Dep. 24:3–9; 31:21–33:15. Safeway decided whether to staff a security guard at a store and how many hours to have a security guard on duty at that store based on a number of factors, including reports of crime in the area surrounding the store, whether the store had experienced robberies or high rates of shoplifting, whether assaults had occurred in the store, whether there were parking or traffic problems at the store, and the national CrimeDex risk rating for the area where the store is located. *Id*. at 26:5–27:11. Safeway did not staff a third-party security guard at the Division store where Mr. Garner assaulted Plaintiff in April 2018. Safeway did employ an asset protection specialist at the Division store, but he was off duty when Mr. Garner assaulted Plaintiff. *Id*. at 6:7–23; Creighton Decl. Ex. 10, ECF 30-10.

## EVIDENTIARY OBJECTION

Defendant argues that the Court should not consider its policies concerning customer and employee safety, security, and Defendant's zero-tolerance discrimination policy in resolving its motion for summary judgment. Defendant argues that the policies are inadmissible under Oregon law because they are likely to confuse the jury about the applicable standard of care. Plaintiff submitted Defendant's policies for the following purposes: (1) to argue that a reasonable juror could infer Defendant's discriminatory intent from Defendant's failure to follow its own policies; (2) as evidence of the standard of care in Plaintiff's negligence claim; and (3) to show the unreasonableness of Defendant's conduct. Pl. Surreply 4, ECF 35. Plaintiff also argues that the Court should overrule Defendant's objection because Defendant failed to confer with Plaintiff about the objection before making it, which violated Local Rule 7-1(a).

///

## I.    Discriminatory Intent

Evidence of discriminatory intent can be inferred from an organization's failure to follow its own policy. *See O.H. v. Oakland Unif. Sch. Dist.*, No. C-99-5123 JCS, 2000 WL 33376299, at *14 (N.D. Cal. Apr. 14, 2000) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996), which held that "[i]t is well settled law that departures from established practices may evidence discriminatory intent."). Thus, the Court may consider whether Defendant failed to follow its own policies in determining whether Plaintiff has raised a genuine issue of material fact that Defendant intentionally discriminated against Plaintiff. Defendant's objection is overruled.

## II.    Negligence

The Court need not consider Safeway's employee and security personnel policies to determine whether Plaintiff has raised a question of fact concerning Defendant's negligence. Consequently, the Court declines to rule on whether Defendant's policies are admissible for the purpose of demonstrating Defendant's negligence at this juncture.

## MOTION TO STRIKE CHAPMAN DECLARATION

Plaintiff moves to strike the declaration of Scott Chapman filed in support of Defendant's reply. Plaintiff argues that it is improper opinion evidence, that Mr. Chapman is not qualified as an expert, and that Mr. Chapman lacks personal knowledge about the topics he attests to in his declaration.

Mr. Chapman's declaration is largely duplicative of his deposition testimony, which is in the summary judgment record. To the extent that Mr. Chapman's declaration states facts and opinions beyond those contained in the excerpts of his deposition testimony, the Court does not need to consider them to rule on Defendant's motion for summary judgment. Plaintiff's motion to strike is denied.

**STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the Court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The Court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)

(internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Defendant argues that Plaintiff failed to produce sufficient evidence to establish a question of fact that precludes summary judgment on his racial discrimination claims under 42 U.S.C. § 1981 and Or. Rev. Stat. § ("O.R.S.") 659A.403, his racial intimidation claim, and his negligence claim.

## I.    Racial Discrimination Under 42 U.S.C. § 1981

Defendant moves for summary judgment on Plaintiff's racial discrimination claim under 42 U.S.C. § 1981 because Plaintiff has failed to make a prima facie case of discrimination and has failed to produce any evidence of discriminatory intent.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The phrase "make and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The rights protected by section 1981 are protected from impairment by both "nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

///

A.      **Prima Facie Case**

Courts apply the *McDonnell Douglas* burden-shifting analysis to section 1981 claims.

*Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802–03 (1973)). Under *McDonnell Douglas*, if Plaintiff establishes a

prima facie case of racial discrimination, then Defendant has the burden to establish that it had a

legitimate, non-discriminatory reason for its actions. *Id*. If Defendant meets that burden, then the

burden shifts back to Plaintiff to demonstrate that the non-discriminatory reason identified by

Defendant was mere pretext for intentional discrimination. *Id*. (citing *Tex. Dep't of Cmty. Affs. v.*

*Burdine*, 450 U.S. 248, 253 (1981)). To establish a prima facie case, Plaintiff needs to provide

only minimal evidence that "'does not even need to rise to the level of a preponderance of the

evidence.'" *Id*. (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th

Cir. 2000)). However, Plaintiff must establish intentional discrimination; disparate impact is

insufficient to establish a claim under section 1981. *Garza v. City of Inglewood*, 874 F.2d 816

(9th Cir. 1989) (mem.); *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1144 (N.D. Cal.

2014) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

To establish a prima facie case of racial discrimination under section 1981, Plaintiff must

establish that he (1) "is a member of a protected class;" (2) "attempted to contract for certain

services;" and (3) "was denied the right to contract for those services" because of his race. *Id*.

(citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)); *Bratton v.*

*Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996). There is disagreement among the

circuit courts about whether the fourth *McDonnell Douglas* requirement—establishing that

"services remained available to similarly situated individuals who were not members of the

plaintiff's protected class"—applies to racial discrimination claims arising under section 1981 in

a non-employment context. *See id*. The Ninth Circuit has yet to affirmatively adopt the fourth *McDonnell Douglas* requirement in the non-employment context. *Id*. (declining to decide whether the fourth requirement applies in "many or all cases arising in a commercial, non-employment context" or whether it "must be relaxed in other circumstances.").

Defendant concedes that Plaintiff is a member of a protected class. Defendant argues that Plaintiff failed to establish a prima facie case of racial discrimination because he cannot establish that Defendant denied him the right to contract for services at any time that he attempted to contract for services and argues that there is no evidence that Defendant intentionally discriminated against him. Def. Mot. Summ. J. ("Def. Mot.") 14–15, ECF 16.

    i.    <u>Making of the Contract</u>

Defendant argues that because Plaintiff was able to purchase his items and leave the store despite his assault, he was able to contract for the services that he attempted to contract for. As a result, Defendant argues, his section 1981 claim fails as a matter of law. The right to make and enforce contracts includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 "'applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship.'" *Brown v. Mydatt Servs. Inc.*, No. 07-CV-190-BR, 2008 WL 1925041, at *4 (D. Or. Apr. 28, 2008) (quoting *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002)). The Ninth Circuit has not established the parameters of the minimum showing necessary to demonstrate an attempt to make a contract in a non-employment context. However, cases from other circuits are persuasive.

The First Circuit in *Garrett v. Tandy Corp.* held that

[S]hopping in a retail store may involve multiple contracts. Each time a customer takes an item off the shelf, a new contract looms, and each time the item is returned,

the potential contract is extinguished. The 1991 expansion of the definition of "make and enforce contracts" in section 1981, then, extends the reach of the statute to situations beyond the four corners of a particular contract; the extension applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship.

295 F.3d 94, 100 (1st Cir. 2002) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)). The court in *Garrett* held that in order to state a claim for a section 1981 violation, "a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship." *Id*. Ultimately, the court held that the plaintiff had not alleged sufficient facts to state a section 1981 claim based on his allegations that the defendant watched him using surveillance cameras on suspicion of shoplifting before his purchase and that the defendant accused him of shoplifting after he bought his items because the store facilitated his purchase of the items he had selected to purchase. *Id*. at 101–03 (holding that the interference "bore no real connection to the contractual relationship" because the interference "must have some negative effect on the shopper's ability to contract with the store in order to engage the gears of section 1981.").

The Tenth Circuit held that a woman could not establish a section 1981 claim after she was asked to leave a store due to her race because she had not made or attempted to make a specific purchase and thus had not attempted to contract for the store's services. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117–18 (10th Cir. 2001). The *Hampton* court held that there "must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Id*. at 1118. The court held that there must be "the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Id*. at 1104.

The Fourth and Fifth Circuits and a case from this district also require that a plaintiff who brings a section 1981 claim be engaged in the act purchasing goods to establish a prima facie case. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667–68 (4th Cir. 2004) (holding that the plaintiff attempted to contract by trying to purchase an item in a checkout line with an out-of-state check); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001) (holding that the plaintiff must offer "evidence of some tangible attempt to contract" during the time she was banned from a store that "could give rise to a contractual duty between her and the merchant . . . which was in some way thwarted."); *Brown*, 2008 WL 1925041, at *5–6 (finding that the plaintiff had failed to make a prima facie case under section 1981 when he was asked to leave a shopping mall even though he had "established his intent both to purchase something to eat at the food court and to consider the sale items at the Van's store" because he had not established "any 'tangible attempt to contract' with any retail establishment at the mall such as physically selecting merchandise to buy.") (quoting *Morris*, 277 F.3d at 752).

The Court is persuaded by the holdings of the First, Fourth, Fifth, and Tenth Circuits that to be actionable under section 1981, a retail store defendant must have actually prevented or interfered with the plaintiff's attempt to make a purchase. The facts of this case are most closely aligned to those of *Garrett.* In *Garrett*, the plaintiff based his section 1981 claim on two facts: first, that he was watched closely over the store's video surveillance system because of his race before making his purchase and, second, that he was confronted by police for suspected shoplifting at his home after making the purchase because a store employee had accused him of shoplifting due to his race. 295 F.3d at 101. The court held that neither instance of racial discrimination was actionable under section 1981 because neither denied the plaintiff the ability to enter into the contract to purchase goods from the store. *Id*. at 101–02. Throughout the

plaintiff's time in the store, the store employees had treated the plaintiff courteously and had assisted the plaintiff with finding and purchasing his items. *Id*. at 101. The court held that with no "sufficient nexus between the alleged discrimination and the [plaintiff's] purchase of goods," the plaintiff had failed to sufficiently allege a section 1981 claim. *Id*. at 103.

This case presents similar facts. Plaintiff walked into the Division Safeway store to purchase cigarettes, beer, and soda and received assistance from Safeway's employees to make those purchases without any evidence of discrimination by the employees during those interactions. First, a Safeway employee assisted Plaintiff with purchasing cigarettes at the customer service counter. Then an employee in the soft drink aisle told Plaintiff where he could find the refrigerated soda he was looking for. After Mr. Garner assaulted Plaintiff, Defendant's employees assisted him a third time in the checkout line where Plaintiff purchased the beer and refrigerated soda he had selected. Plaintiff does not allege that Defendant's employees discriminated against him during any of those encounters. There is no evidence in the record that Plaintiff tried to make a purchase, modify his existing contract with Defendant by attempting to return items he had purchased, or otherwise attempt to contract with Defendant when he returned to Safeway the next day to report the assault. Viewing the facts in the light most favorable to Plaintiff, no reasonable juror could conclude that Plaintiff was "deprived of the right to contract" for his purchase of items at the Safeway store on the day of the assault or at any time thereafter because of his race. The relevant "service" under the facts of this case is the ability to purchase merchandise from a grocery store, and Plaintiff does not argue that he was deprived of the ability to enter into, modify, or enforce any contract with Defendant to purchase merchandise because of his race. As a result, his section 1981 claim must be dismissed as a matter of law. *See Garrett*, 295 F.3d at 102.

Plaintiff argues that his purchase of the goods does not end the section 1981 inquiry because despite his purchase, he was unable to enjoy the "benefits, privileges and terms and conditions of the contractual relationship." He argues that he was unable to enjoy the benefits of the contract because he "had to endure being assaulted and called a racial slur in order to purchase items from Safeway," and Defendant discriminated against him when its employees failed to follow their own policies to prevent discrimination and to report and respond to customer incidents. Pl. Am. Opp'n 14, ECF 31.

Plaintiff's argument assumes an overbroad view of the "benefits, privileges and terms and conditions" of the contract relevant to a section 1981 claim. Section 1981 does not guarantee patrons of a store an enjoyable shopping experience, it guarantees patrons of a retail store the ability to enter into a contract free from racial discrimination. *See Brown*, 2008 WL 1925041, at *5 ("a contract is not created between a patron and a retail establishment merely by virtue of physically crossing the threshold onto the mall's property."); *Hampton*, 247 F.3d at 1118 (holding that section 1981 does not protect customers from harassment upon entering a retail establishment."). The fact that the discrimination did not occur while Plaintiff was attempting to consummate the contract is fatal to his section 1981 claim.

To the extent that Plaintiff claims that the discrimination he faced somehow influenced his purchasing decisions, other courts have held that conduct that discouraged or dissuaded the plaintiff from making a purchase was insufficient to maintain a section 1981 claim if the plaintiff did not attempt to enter into a contract. *See Morris v. Office Max*, 89 F.3d 411, 414 (7th Cir. 1996) (rejecting customer's section 1981 claim based on allegations that he left the store without trying to make a purchase because he was dissuaded from doing so after he was approached by police in a store for alleged shoplifting); *Jackson v. Tyler's Dad's Place, Inc.*, 850 F. Supp. 53,

56 (D.D.C. 1994) (rejecting restaurant customer's section 1981 claim because the customer did not attempt to sit and order or otherwise enter into a contractual relationship with the restaurant after the customer was dissuaded from dining at the restaurant because its employees discriminated against the customer).

    ii.    <u>Intentional Discrimination</u>

The only evidence that Plaintiff has produced to establish that Defendant intentionally discriminated against him is evidence that Defendant failed to follow the policies that it had in place to prevent and respond to racial discrimination against its customers and employees and to investigate and document incidents such as customer assaults. Even assuming that Defendant's policies required Defendant to take the actions that Plaintiff alleges, Plaintiff has produced no evidence that Plaintiff's race was the *reason* that Defendant's employees failed to comply with Defendant's policies. Even the most generous interpretation of the evidence that Plaintiff has presented is race-neutral and, at best, establishes only that Defendant did not do a thorough job of implementing and enforcing its own policies.

Plaintiff argues that evidence that Plaintiff received services in a markedly hostile manner may raise an inference of intentional discrimination sufficient to defeat summary judgment. Plaintiff relies on *Christian*, in which the Sixth Circuit held that a plaintiff may establish that he or she was denied the right to enjoy the privileges or benefits of a contractual relationship by demonstrating that "(a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner in which a reasonable person would find objectively discriminatory." 252 F.3d at 872. The Ninth Circuit has declined to formally adopt this requirement. *Lindsey*, 447 F.3d at 1144. To the extent that it is persuasive authority, Plaintiff has failed to demonstrate that he

"received services in a markedly hostile manner and in a manner in which a reasonable person would find objectively discriminatory." *Christian*, 252 F.3d at 872. The only Safeway employee that Plaintiff argues treated him with any hostility was Tim Thompson, the employee that Plaintiff spoke to when he returned to report the assault to Safeway the following day. However, Plaintiff's own testimony about his interaction with Mr. Thompson establishes only that "[Mr. Thompson] didn't even want to take a report." Pl. Dep. 53:19–21. That description falls far short of one that a reasonable person would find objectively discriminatory and one from which the Court could infer intentional racial discrimination on Defendant's part.

      iii.    <u>Discrimination by a Third Party</u>

Even if Plaintiff could otherwise make a prima facie case under section 1981, Plaintiff has offered no authority to support his contention that racial discrimination by a third party could be a basis for his section 1981 claim. It is undisputed that Mr. Garner was not an agent or employee of Defendant. Plaintiff cites no authority to suggest that a store employee's failure to prevent racial discrimination by one customer toward another customer is sufficient to maintain a section 1981 claim against the store. At most, Defendant acted negligently, which is insufficient to establish intentional discrimination. Section 1981 is not a general prohibition of race discrimination; it is the prohibition of intentional racial discrimination in making and enforcing contracts. *Garrett*, 295 F.3d at 99 (citing legislative history indicating that the legislature's intent in amending section 1981 was "to bar all racial discrimination in contracts."); *see also Hampton*, 247 F.3d at 1118 (rejecting amicus curiae's "expansive interpretation that § 1981 broadens the scope of relevant civil rights and protects customers from harassment upon entering a retail establishment."). Similarly, Defendant's failure to document the assault and investigate it later, even if motivated by racial discrimination, is insufficient to establish section 1981 liability when

that conduct did not divest Plaintiff of the contracted-for merchandise, prevent him from enforcing or modifying his contract to purchase the merchandise, or prevent him from entering into a new contract. *See Garrett*, 295 F.3d at 101–02.

In support of his argument that Defendant deprived him of the right to enjoy the benefits of his contract with Defendant, Plaintiff cited only cases in which the court found that the plaintiff could maintain a section 1981 claim based on the discriminatory acts of the defendant's employee(s), not the discriminatory acts of any third party. Pl. Am. Opp'n 12–14. In *Allen v. U.S. Bank Corp.*, the plaintiff visited a bank branch to make a transaction, and a bank employee asked the plaintiff to remove his sunglasses and move to another teller line because of his race. 264 F. Supp. 2d 947–48 (D. Or. 2003). The other cases Plaintiff cited also involve alleged discrimination by the defendant's employees rather than by third parties. *See Lindsey*, 447 F.3d at 1142–43 (discrimination by defendant hotel employee against fashion show representatives, who had contracted to rent the hotel's ballroom, because of their race); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 865–66 (6th Cir. 2001) (discrimination by defendant store employee who accused the plaintiff of shoplifting because of the plaintiff's race); *Williams v. Kohl's Dep't Stores, Inc.*, No. 3:12-cv-01385-PK, 2014 U.S. Dist. LEXIS 78084, at *53–55 (D. Or. Mar. 31, 2014) (discrimination by defendant store employee during the plaintiff's attempt to exchange store merchandise). As a result, those cases do not support Plaintiff's argument that he can maintain a section 1981 claim against Defendant that arises out of its failure to prevent or intervene in the discriminatory acts of a third party.

The undisputed material facts show that Defendant's employees helped Plaintiff find and purchase the items he selected, and there is no evidence that Defendant discriminated against Plaintiff during any of those interactions. Plaintiff argues that Defendant's employees expressed

racial animus by not following their own policies, but the incidents of racial animus identified by Plaintiff did not occur during Plaintiff's purchase of any items. Even drawing all reasonable inferences in Plaintiff's favor, the alleged incidents of racial animus had nothing to do with the contract that he made when he purchased items from Defendant. Defendant did not deprive Plaintiff of the ability to make a contract or to enforce or modify the contract he made when he purchased the items. Because a reasonable person would not find the employees' conduct to be objectively discriminatory, Plaintiff has failed to make a prima facie case of intentional racial discrimination under section 1981. *Hampton*, 247 F.3d at 1118 ("there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping."); *Brown*, 2008 WL 1925041, at *4 (a section 1981 claim must involve the "actual loss of a contract interest.").

## II.     Racial Discrimination Under O.R.S. 659A.403

The Oregon Public Accommodations Act provides:

> [A]ll persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, color, religion, sex, sexual orientation, national origin, marital status or age[.]

O.R.S. 659A.403(1). It is "an unlawful practice for any person to deny full and equal accommodations, advantages, facilities and privileges of any place of public accommodation in violation of this section." O.R.S. 659A.403(3).

Federal courts apply the *McDonnell Douglas* burden-shifting analysis to racial discrimination claims that arise under state law. *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1089 (D. Or. 2018). Thus, Plaintiff first must make a prima facie case of racial discrimination. *Id*. To state a prima facie case of racial discrimination under O.R.S. 659A.403, Plaintiff must establish that he was treated unequally because of his race and that he has been

injured as a result. *Id*. (citing *Allen*, 264 F. Supp. 2d at 954). Direct evidence of racial

discrimination is not required; circumstantial evidence of discriminatory intent will suffice. *Id*.

(citing *Lindsey*, 447 F.3d at 1140–41). Plaintiff alleges that Defendant treated him unequally

because of his race when Defendant (1) failed to prevent or intervene in Mr. Garner's physical

and verbal assault, and (2) failed to report and investigate the incident after it occurred.

To raise the inference of discrimination at the summary judgment stage, Plaintiff must at

least produce circumstantial evidence of Defendant's discriminatory intent. *Id*. (O.R.S. 659A.403

requires proof of discriminatory intent, not merely discriminatory effect). Plaintiff has offered no

evidence to suggest that the reason that Safeway failed to prevent or intervene in Mr. Garner's

assault on Plaintiff was that Defendant intended to treat Plaintiff unequally due to his race. There

is no evidence in the record that Defendant knew that Mr. Garner was about to assault Plaintiff

and shout racial epithets at him or that Defendant would have intervened if Mr. Garner's assault

had been directed at a person of another race. Even viewing the facts in the light most favorable

to Plaintiff, there is no direct or circumstantial evidence from which to draw the inference that

Defendant's inaction in the face of Mr. Garner's racist attack on Plaintiff was because of

Plaintiff's race. On the contrary, the evidence in the record shows that Defendant's employees

were helpful to Plaintiff in finding and purchasing his items both before and after the assault. As

a result, Plaintiff has failed to make a prima facie case based on Defendant's pre-assault failure

to intervene.

Plaintiff points to Defendant's failure to follow its own policies after the assault and asks

the Court to draw the inference that Defendant's failure to comply with those policies is evidence

of its discriminatory intent. Specifically, Plaintiff argues that the Court should infer Defendant's

discriminatory intent from several facts which Plaintiff argues demonstrate Defendant's violation

of its own policies: Defendant's employees failed to document the incident in an incident report, take witness statements, check the store to see if Mr. Garner had left after he assaulted Plaintiff, notify a manager, and call the police. In addition, Plaintiff argues that when he returned to the store the following day to report the incident, Tim Thompson, the employee he spoke to, did not want to complete a report. None of that evidence suggests that Plaintiff's race played a role in Defendant's failure to follow its own policies and Tim Thompson's reluctance to complete a report. As a result, there is no genuine issue of material fact that precludes summary judgment on Plaintiff's state law discrimination claim. *See Forsberg v. Pac Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("Although courts should use summary procedures judiciously when intent is an issue, purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment.") (citation omitted).

### III.    Racial Intimidation

Oregon law provides a private right of action that allows a plaintiff to seek money damages and equitable relief when the plaintiff has been injured by a person who has committed a bias crime against the plaintiff. O.R.S. 30.198 (providing that a person who committed a bias crime by engaging in conduct that violates O.R.S. 166.155 or 166.165 may be held liable). Defendant argues that none of its employees' conduct violated O.R.S. 166.155 or O.R.S. 166.165, so Plaintiff's claim for damages under O.R.S. 30.198 fails as a matter of law.

Plaintiff's complaint alleges that "Defendant intentionally subjected Plaintiff to alarm by placing Plaintiff in fear of physical injury because of his race." Pl. Compl. ¶ 24, ECF 1. In response to Defendant's motion for summary judgment, Plaintiff argues that Defendant's qualifying bias crime is violation of O.R.S. 166.155(1)(b), which makes it a crime for any person to "[i]ntentionally subject[] another person to offensive physical contact because of the person's

perception of the other person's race, color, religion, gender identity, sexual orientation, disability or national origin." To establish that Defendant violated O.R.S. 166.155(1)(b), Plaintiff must prove that Defendant intentionally subjected Plaintiff to offensive physical contact because of Defendant's perception of Plaintiff's race. Defendant argues that Plaintiff has produced no evidence that Defendant committed the actus reus of subjecting Plaintiff to offensive physical contact or that Defendant had the requisite mens rea of doing so intentionally.

Plaintiff claims that by failing to prevent Mr. Garner's racist assault on Plaintiff, Defendant intentionally subjected Plaintiff to offensive physical contact. This amounts to a claim that a third party can be held liable for failing to prevent another from committing a bias crime. Plaintiff offers a lengthy statutory construction argument about what the word "subjects" in O.R.S. 166.155(1)(b) means to establish that Defendant's failure to act to prevent Mr. Garner's assault subjected Plaintiff to a bias crime.

The Court need not determine whether a third party can be held liable for damages under O.R.S. 30.198 for failing to prevent another from committing a bias crime because even if that is the case, there is no evidence in the record that subjecting Plaintiff to a bias crime was Defendant's intent. As discussed above, there is no evidence in the record that Defendant's actions or inactions concerning Plaintiff were motivated by racial animus. Without the element of intent, there is no violation of O.R.S. 166.155 and, consequently, Plaintiff's claim under O.R.S. 30.198 fails as a matter of law.

## IV.    Negligence

Defendant argues that it is entitled to summary judgment on Plaintiff's negligence claim because Defendant's conduct did not create a foreseeable risk of harm to Plaintiff and because it did not breach any duty owed to Plaintiff.

### A.  Duty and Breach

Under Oregon law, when a special status or relationship exists between the parties, that relationship or status defines the defendant's duty of care. *Buchler v. State ex rel. Or. Corr. Div.*, 316 Or. 499, 504 (1993); *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 19 (1987). "The obligations of a storekeeper to a customer create a 'special relationship' that takes the claim out of the general standards of common law negligence." *Rex v. Albertson's, Inc.*, 102 Or. App. 178, 180–81 (1990). The duty of a possessor of land that it holds open to the public to further the possessor's economic interest may be held liable for

> physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
>> (a)  discover that such acts are being done or are likely to be done, or
>>
>> (b)  give a warning adequate to enable the visitors to avoid the harm, or otherwise protect against it.

*Whelchel v. Strangways*, 275 Or. 297, 304 (1976) (adopting and applying Restatement Second of Torts § 344 and § 344 *comment f*). Section 344 of the Second Restatement provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344, *comment f.* Comment f applies to negligence claims arising from assaults by one customer on another customer in a store. *Uihlein v. Albertson's, Inc.*, 282 Or. 631, 639 (1978).

A defendant who invites others onto its premises to further the business of the defendant owes a duty to invitees to use due care for the invitee's safety. *Parker v. Hult Lumber & Plywood Co.*, 260 Or. 1, 8 (1971) (describing the economic benefit theory of premises liability). There is no dispute that Defendant invites members of the public to shop in its store for its economic benefit. When determining whether a defendant's act or failure to act that injures an invitee was reasonable, the Court must consider: "the likelihood of harm, the severity of the possible harm, the cost of action that would prevent harm, and the defendant's position, including the defendant's relationship with the plaintiff." *Fuhrer v. Gearhart-By-the-Sea, Inc.*, 306 Or. 434, 439 (1988) (internal quotation marks and footnote omitted).

Defendant argues that because it did not know that Mr. Garner's assault was occurring or about to occur, it had no duty to protect Plaintiff. But Defendant's position ignores the undisputed fact that Mr. Garner was a problem customer. Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant could have reasonably anticipated Mr. Garner's criminal conduct based on his prior conduct in the store. Mr. Garner had been asked to leave Safeway at least once before when he had a verbal and profane outburst in the store.[1] That evidence creates a question of fact about whether Defendant had a duty to protect other customers, including Plaintiff, from the risk of harm posed by Mr. Garner.

---

[1] Several of Defendant's employees witnessed Mr. Garner's profane verbal outbursts in the Division Safeway store, but the record is unclear about when those incidents occurred. Morgan Bratcher testified that she believed her observations of Mr. Garner occurred after April 2018, Bratcher Dep. 21:1–8, but the record does not explain when the incident in which Mr. Garner attempted to start an altercation with James Porter occurred and when Nadia Pitsul's encounter with Mr. Garner occurred (other than that it was a "couple months ago" when she wrote her statement in September 2018). *See* Creighton Decl. Exs. 13–14. Defendant does not dispute that Mr. Garner had made profane verbal outbursts in the store before April 27, 2018. Scott Chapman, Defendant's director of asset protection for the Portland division, which includes the Division Safeway store, testified that violent acts by customers against other customers have happened in Safeway's stores generally. Chapman Dep. 69:16–23.

Defendant cites a number of cases in which courts have found that stores and restaurants owed no duty of care to protect one patron from the criminal acts of others. In those cases, however, the defendants had no prior knowledge of any dangerous propensity of the person who engaged in the criminal conduct. *See Rosenteil v. Lisdas*, 253 Or. 625, 629–30 (1969) (restaurant had no duty to protect restaurant patrons from a fight that occurred in the restaurant because there was "no evidence that anything previously occurring in the restaurant would have given defendants reason to believe" that the fight was about to occur); *Uihlein*, 282 Or. at 633–34 (holding that the defendant owed no duty to store customer who was assaulted by another customer in part because "[t]here is nothing in the record to show that any of defendant's employees either took any prior notice of the assailant or had any reason to do so before his harmful act against [the] plaintiff."). Contrary to Defendant's argument, those cases are distinguishable because, here, Defendant had at least some reason to take notice of Mr. Garner before he assaulted Plaintiff.

Defendant argues that Mr. Garner's prior non-violent behavior in the store is insufficient to establish that his violent behavior directed at Plaintiff was reasonably foreseeable. The Court cannot say that no reasonable juror could conclude that Mr. Garner's assault was foreseeable based on his prior non-violent verbal outburst in the store. The questions of foreseeability and reasonableness of Defendant's conduct "should generally be determined by a factfinder, except in an 'extreme case.'" *Pickens v. United States*, 750 F. Supp. 2d 1243, 1257 (D. Or. 2010) (quoting *Donaca v. Curry Cty.*, 303 Or. 30, 38 (1987)). This is not an extreme case where "a court can decide that no reasonable factfinder could find the risk foreseeable or defendant's conduct to have fallen below acceptable standards." *Id*. at 38–39. Accordingly, summary judgment on Plaintiff's negligence claim is improper.

**B. Causation**

Defendant argues that Plaintiff has failed to establish that its conduct was a cause-in-fact of Plaintiff's harm. According to Defendant, because it happened so quickly, Plaintiff's injury would have occurred regardless of whether Defendant took any steps to prevent it. For the defendant's conduct to be a cause in fact, the plaintiff must provide "evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed." *Joshi v. Providence Health Sys. of Or. Corp.*, 198 Or. App. 535, 538–39 (2005) (citing *Horn v. Nat'l Hosp. Ass'n*, 169 Or. 654, 649 (1942)). Plaintiff argues that but for Defendant's failure to have reasonable security in the store and failure to prevent Mr. Garner from entering the store, Plaintiff would not have been injured. The Court cannot say that no reasonable juror could conclude that the assault would have occurred anyway even if Defendant had taken measures to protect customers like Plaintiff from the risk of harm posed by Mr. Garner. The question of causation thus must be left to the jury to decide.

## CONCLUSION

The Court GRANTS IN PART Defendant's Motion for Summary Judgment [16]. Plaintiff's claims under 42 U.S.C. § 1981, O.R.S. 659A.403, and O.R.S. 30.198 are DISMISSED. The Court denies Defendant's motion for summary judgment as to Plaintiff's negligence claim. Plaintiff's Motion to Strike [37] is DENIED.

IT IS SO ORDERED.

DATED:_____August 12, 2020_____.

_Marco Hernandez_
MARCO A. HERNANDEZ
United States District Judge